UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

- - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

No. 1:21-CR-180

GEOFFREY MARK TALSMA,
a/k/a GEOFFREY MARK HAYS
TALSMA,

        Defendant.

Hon. HALA Y. JARBOU
U.S. District Judge

_____/

## PLEA AGREEMENT

This constitutes the plea agreement between Geoffrey Mark Talsma and the United States Attorney's Office for the Western District of Michigan. The terms of the agreement are as follows:

    1.   <u>Defendant Agrees to Plead Guilty</u>. Defendant agrees to plead guilty to Counts 8 and 28 of the Indictment. Count 8 charges Defendant with mail fraud in violation of Title 18, United States Code, Section 1341. Count 28 charges Defendant with aggravated identity theft in violation of Title 18, United States Code, Section 1028A.

    2.   <u>Defendant Understands the Crime</u>. In order for Defendant to be guilty of violating Title 18, United States Code, Section 1341, the following must be true: (1) Defendant knowingly participated in a scheme to defraud another person of money or property; (2) the scheme to defraud involved a material misrepresentation or concealment of a material fact; (3) Defendant had the intent to defraud; and, (4)

Defendant used, or caused another person to use, the United States mail or a private or commercial interstate carrier in furtherance of the scheme to defraud.

In order for Defendant to be guilty of violating Title 18, United States Code, Section 1028A, the following must be true: (1) Defendant committed the felony of wire fraud charged in Count 23 of the indictment, which is one of the enumerated felonies in the aggravated identity theft statute; (2) Defendant knowingly transferred, possessed or used a means of identification of another person without lawful authority; (3) Defendant knew the means of identification belonged to another person; and, (4) the transfer, possession or use was during and in relation to the crime of wire fraud charged in Count 23.  Defendant is pleading guilty because Defendant is guilty of the charges described above.

3.    <u>Defendant Understands the Penalty</u>.  The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1341, is the following:  20 years of imprisonment; a 3-year period of supervised release; a fine of $250,000.00, or twice the gross gain or gross loss resulting from the offense, whichever is greater; and a mandatory special assessment of $100. The statutory minimum and maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1028A, is the following:  a mandatory 2 years of imprisonment to be served consecutively to any other prison term imposed; a one-year period of supervised release; a fine of $250,000.00 or twice the gross gain or gross loss resulting from the offense, whichever is greater; and a mandatory special assessment of $100.  Defendant

2

agrees to pay the special assessments at or before the time of sentencing unless Defendant affirmatively demonstrates to the Court that Defendant lacks the ability to pay.

4.      Mandatory Restitution (MVRA). Defendant understands that he will be required to pay full restitution as required by law. Defendant agrees that the restitution order is not restricted to the amounts alleged in the counts to which Defendant is pleading guilty. Defendant acknowledges that any payment plan set by the Court does not prohibit the United States from collecting restitution beyond the installments set forth in the payment plan, until restitution is collected in full. Defendant agrees to fully and truthfully complete a Financial Disclosure Statement and to submit the statement to the Financial Litigation Unit of the U.S. Attorney's Office within thirty days of executing this agreement.

5.      Asset Forfeiture and Financial Accountability. Defendant agrees to disclose to law enforcement officials the whereabouts of, the Defendant's ownership interest in, and all other information known to Defendant about, all assets, money or property of any kind, derived from or acquired as a result of, or used to facilitate the commission of Defendant's illegal activities. Defendant further agrees to forfeit all rights, title, and interest in and to such items.

Defendant agrees to forfeit to the United States the sum of $712,050, which represents the proceeds Defendant obtained as a result of his participation in the mail fraud scheme charged in the Indictment.

3

Defendant consents to the forfeiture of substitute property pursuant to 21 U.S.C. § 853(p). Defendant acknowledges that the proceeds he obtained, directly or indirectly from the mail fraud scheme, were spent on living expenses or otherwise spent on assets he no longer possesses. As such, Defendant agrees that his criminal proceeds cannot be located upon the exercise of due diligence and have been commingled with other property which cannot be divided without difficulty.

The U.S. Attorney's Office agrees to submit a restoration request to the Department of Justice Money Laundering and Asset Recovery Section for the application of any proceeds from such forfeited property towards Defendant's restitution order. Defendant acknowledges that the Department of Justice Money Laundering and Asset Recovery Section has the sole authority to grant or deny the restoration request and that the submission of such a request by the U.S. Attorney's Office does not guarantee that such request will be granted.

6. <u>Factual Basis of Guilt</u>. Defendant and the U.S. Attorney's Office agree and stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing:

From approximately January 2016 until March 2021, Defendant defrauded Amazon's textbook rental program and recruited or otherwise used other individuals to carry out his scheme to defraud.

Defendant defrauded Amazon by using the internet to create numerous Amazon accounts and email accounts to rent textbooks and sell the textbooks for a profit when he should have returned the textbooks or paid the agreed upon buy-out price. Defendant created these numerous accounts in false names because he knew that Amazon's system was designed so that each individual typically had one Amazon account and each account was limited to no more than 15 textbook rentals at any one time. Each time Defendant created new accounts he represented to Amazon that he was a new Amazon customer, when in truth and in fact, he was the

4

same person who had already exceeded the limit of fifteen rental textbooks per customer.

Defendant caused Amazon to ship the textbooks through the United States Postal Service or across state lines using private commercial carriers.  Defendant concealed his fraudulent activities in part by recruiting and paying unwitting individuals to accept shipment of stolen textbooks at their homes so that Amazon would not detect a pattern of large volumes of books going to one location associated with Defendant.  Defendant told these individuals that the shipments of textbooks were part of his legitimate textbook distribution business.  Additionally, Defendant recruited codefendants Greg Gleesing, Paul Larson, and Lovedeep Singh Dhanoa as accomplices to his scheme.  Defendant initially paid these unwitting individuals to accept shipments of textbooks at their home or place of employment in exchange for a small payment.  Over time, Defendant taught them the scheme to defraud and actively supervised their participation in the fraud.  Defendant shared the profits of the fraud scheme with these individuals after he sold the textbooks over the internet and at various bookstores, including a bookstore in Kalamazoo, Michigan.

With respect to count 8 of the Indictment, Defendant created an Amazon account in a false name that was a variation of the true name of his then girlfriend using an IP address assigned to his primary Verizon cell phone.  Defendant then ordered a textbook, *Compensation* (Irwin Management), in that same false name with an IP address assigned to his home in the Western District of Michigan.  In order to mask his true identity, Defendant secured the buy-out price of the textbook (in the event he did not return the textbook) with a myVanilla Visa Card purchased at a Speedway gas station near his home in Portage.  Defendant received the textbook at his home through the United States Postal Service and sold the textbook for a profit.  After receiving the textbook, Defendant called Amazon's customer service department and falsely reported that his girlfriend did not receive the textbook she ordered but instead received flammable items that she could not return.  Amazon granted Defendant a concession, meaning it gave Defendant a gift card for the rental price of the *Compensation* textbook, and canceled the rental transaction.  Because Amazon's system would not allow a customer to rent more than 15 textbooks at any one time, the false concession call and cancellation of the rental allowed Defendant to rent another textbook on the same Amazon account.  Defendant made numerous false concession calls and as a result was able to rent 35 textbooks between June 18 and June 22, 2018, on the same Amazon account in the false name variation of his girlfriend.  Defendant used the Amazon gift cards that he obtained through his false concession calls to order the additional textbooks on the account.

Defendant admits that he regularly engaged in false concession calls to Amazon's customer service department, some of which are set forth in counts 18 to 26 of the Indictment.  Defendant admits that he engaged in the false concession

calls so that he could order more than 15 textbooks on the various Amazon accounts and so that he could obtain gift cards from Amazon and use Amazon's money to rent additional textbooks.

Defendant further admits that when committing the crime of wire fraud related to count 23 of the indictment, Defendant knowingly possessed, transferred or used the means of identification of another person without lawful authority, knowing that the means of identification belonged to an actual person. Specifically, Defendant used the name and address of victim J.H. Defendant previously used J.H. as an unwitting drop-point to receive textbooks and without J.H.'s knowledge or permission, created an Amazon account in his name and ordered textbooks using his name and address. On July 28, 2018, Defendant made a concession call from his cell phone in the Western District of Michigan to Amazon's customer service center outside of Michigan, and falsely represented to Amazon that he was J.H. and lived at the address actually belonging to J.H. so that the customer service representative would believe he or she was actually talking to J.H. and would process the request for a concession.

7.    Dismissal of Other Counts/Charges.  The U.S. Attorney's Office agrees to move to dismiss the remaining counts of the Indictment against Defendant at the time of sentencing.  Defendant agrees, however, that in determining the sentence the Court may consider the dismissed counts in determining the applicable Sentencing Guidelines range, where the sentence should fall within the applicable guidelines range, and the propriety of any departure from the calculated guidelines range.  By this agreement, Defendant does not concede that an increased sentence or an upward departure is, in fact, warranted.

8.    Non-Prosecution Agreement.  The U.S. Attorney's Office for the Western District of Michigan agrees, except for crimes of violence or criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not to further prosecute Defendant for violations of federal criminal law arising out of Defendant's scheme to defraud Amazon's textbook rental program

through the rental of textbooks or the concession calls.  Defendant understands that the U.S. Attorney's Office is free to prosecute Defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement

9.      The Sentencing Guidelines.  Defendant understands that, although the United States Sentencing Guidelines (the "Guidelines") are not mandatory, the Court must consult the Guidelines and take them into account when sentencing Defendant.  Defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing.  Defendant understands that Defendant and Defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guideline range and the sentence to be imposed.  Defendant further understands that the Court shall make the final determination of the Guideline range that applies in this case, and may impose a sentence within, above, or below the Guideline range, subject to the statutory maximum penalties described elsewhere in this Agreement.  Defendant further understands that disagreement with the Guideline range or sentence shall not constitute a basis for withdrawal of the plea.

10.      There is No Agreement About the Final Sentencing Guidelines Range. Defendant and the U.S. Attorney's Office have no agreement as to the applicable Sentencing Guidelines factors or the appropriate guideline range.  Both parties reserve the right to seek any sentence within the statutory maximum, and to argue for any criminal history category and score, offense level, specific offense

7

characteristics, adjustments and departures.  More specifically, the parties have no agreement regarding the amount of actual or intended loss and each party reserves the right to present evidence and argument to the United States Probation Office and the Court regarding the correct computation of the loss amount.  However, the Government has informed Defendant that its current calculation of loss exceeds $1,500,000.00 but does not exceed $3,500,000.00 and, if the Court ultimately determines that the sentencing loss falls within that range, Defendant will receive an increase to his base offense level of 16 points under U.S.S.G. § 2B1.1(b)(I).

11.   <u>Waiver of Constitutional Rights</u>.  By pleading guilty, Defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court.  As a result of Defendant's guilty plea, there will be no trial.  At any trial, whether by jury or by the Court, Defendant would have had the following rights:

a.   The right to the assistance of counsel, including, if Defendant could not afford an attorney, the right to have the Court appoint an attorney to represent Defendant.

b.   The right to be presumed innocent and to have the burden of proof placed on the Government to prove Defendant guilty beyond a reasonable doubt.

c.   The right to confront and cross-examine witnesses against Defendant.

d.      The right, if Defendant wished, to testify on Defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

e.      The right not to be compelled to testify, and, if Defendant chose not to testify or present evidence, to have that choice not be used against Defendant.

f.      By pleading guilty, Defendant also gives up any and all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

12.    <u>Waiver of Other Rights</u>.

a.      <u>Waiver</u>.  In exchange for the promises made by the government in entering this plea agreement, Defendant waives all rights to appeal or collaterally attack Defendant's conviction, sentence, or any other matter relating to this prosecution, except as listed below.

b.      <u>Exceptions</u>.  Defendant may appeal or seek collateral relief to raise a claim, if otherwise permitted by law in such a proceeding, on the following grounds:

i.      Defendant's sentence on any count of conviction exceeded the statutory maximum for that count;

ii.     Defendant's sentence was based on an unconstitutional factor, such as race, religion, national origin, or gender;

9

iii.     the district court incorrectly determined the Sentencing Guidelines range, if Defendant objected at sentencing on that basis;

iv.     the guilty plea was involuntary or unknowing;

v.     an attorney who represented Defendant during the course of this criminal case provided ineffective assistance of counsel.

If Defendant appeals or seeks collateral relief, Defendant may not present any issue in the proceeding other than those described in this subparagraph.

13.    <u>FOIA Requests.</u>  Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

14.    <u>The Court is not a Party to this Agreement.</u>  Defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed.  Defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, Defendant cannot, for that reason, withdraw his guilty plea, and he will remain bound to fulfill all of his obligations under this agreement. Defendant understands that no one—not the prosecutor, Defendant's attorney, or

the Court—can make a binding prediction or promise regarding the sentence Defendant will receive, except that it will be within the statutory maximum.

15.   <u>This Agreement is Limited to the Parties</u>.  This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state or local prosecuting, administrative or regulatory authority. This agreement applies only to crimes committed by Defendant.  This agreement does not apply to or preclude any past, present, or future forfeiture or civil actions.

16.   <u>Consequences of Breach</u>.  If Defendant breaches any provision of this agreement, including any promise of cooperation, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or all benefits to which Defendant would otherwise be entitled under the terms of this agreement.  In the event that the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever existed.  In such an event, Defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant.  Defendant further agrees to waive and forever give up his right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

17.   <u>This is the Complete Agreement</u>.  This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the

complete understanding between the parties.  No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

18.   <u>Deadline for Acceptance of Agreement</u>.  If a copy of this agreement, executed by Defendant and defense counsel, is not returned to the U.S. Attorney's Office by 2/14/2022, this agreement will be withdrawn automatically and will thereafter have no legal effect or force, unless the U.S. Attorney's Office, in its sole discretion, chooses to accept an executed agreement after that date.

ANDREW BYERLY BIRGE
United States Attorney

_2-22-22_
Date

RONALD M. STELLA
Assistant United States Attorney

12

I have read this agreement and carefully discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement.  No promises or inducements have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  Finally, I am satisfied with the representation of my attorney in this matter.

_____
Date

_____
GEOFFREY MARK TALSMA
Defendant

I am Geoffrey Mark Talsma's attorney.  I have carefully discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement.  To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

2-20-22
_____
Date

_____
SCOTT GRAHAM
Attorney for Defendant

13